[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Tamburrino,* Slip Opinion No. 2016-Ohio-8014.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2016-OHIO-8014

DISCIPLINARY COUNSEL *v.* TAMBURRINO.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Tamburrino,* Slip Opinion No. 2016-Ohio-8014.]

*Judges—Judicial campaigns—Misconduct—Violations of the Code of Judicial Conduct—One-year suspension with final six months stayed on conditions.*

(No. 2016-0858—Submitted August 31, 2016—Decided December 7, 2016.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2015-078.

_____

**LANZINGER, J.**

**{¶ 1}** Respondent, Ronnie Michael Tamburrino of Rock Creek, Ohio, Attorney Registration No. 0021594, was admitted to the practice of law in Ohio in 1983. Relator, disciplinary counsel, charged Tamburrino with violations of the Code of Judicial Conduct in a two-count complaint filed with the Board of Professional Conduct. The complaint alleged that Tamburrino disseminated

campaign materials about his opponent either knowing they were false or in reckless disregard of their falsity.

{¶ 2} After conducting a hearing, a panel of the board issued a report finding that Tamburrino had engaged in the charged misconduct. The panel recommended a conditionally stayed six-month suspension of his license to practice law. The board adopted the panel's report except for the recommended sanction; instead, the board recommended a one-year suspension with the final six months stayed.

{¶ 3} In his objections to the report and recommendation of the board, Tamburrino asserts that the alleged violations were not supported by the evidence, that Ohio's disciplinary process regarding campaign speech is unconstitutional, that his due-process rights were violated during the disciplinary proceedings, and that the board's recommended sanction is unwarranted. We overrule Tamburrino's objections and adopt the board's recommendation.

## FACTS

{¶ 4} In 2014, Tamburrino ran for judicial office for the first time against incumbent Judge Timothy P. Cannon for a seat on the Eleventh District Court of Appeals. In the last weeks and days before the November 4, 2014 election, Tamburrino's campaign broadcasted two negative campaign advertisements against Judge Cannon.

{¶ 5} Starting in mid-October 2014, Tamburrino's campaign aired a television commercial that made the following statements about Judge Cannon:

- "60% of Cannon's Opinions that the Ohio Supreme Court Reviews are REVERSED";
- "Cannon has heard cases less than 35 Days each of the last two years"; and
- "Cannon won't disclose his Taxpayer Funded Travel Expenses."

(Capitalization sic.) In fact, however, in the years leading up to the election, Judge Cannon had consistently disclosed his travel expenses to the Ohio Judicial

Conference, and neither Tamburrino nor anyone else had asked Judge Cannon to disclose his travel expenses to them.

{¶ 6} Paul Malchesky, Judge Cannon's attorney and campaign treasurer, notified Tamburrino on October 25, 2014, that the commercial contained falsehoods. In particular, Malchesky explained that it was false to claim that Judge Cannon had refused to disclose his taxpayer-funded travel expenses because those expenses "have never been requested by anyone" and "[i]f they had been, they are a readily available public record." The letter demanded that Tamburrino stop making false statements about Judge Cannon or else an election complaint would be filed. Two days later, on October 27, Tamburrino sent a letter in response, denying that the statements identified in Malchesky's letter were false.

{¶ 7} Starting the following day, on October 28, Tamburrino's campaign broadcasted another television commercial, which criticized Judge Cannon's concurring opinion in *State v. Andrews*, 177 Ohio App.3d 593, 2008-Ohio-3993, 895 N.E.2d 585 (11th Dist.). The commercial begins with a faceless, robed judge standing at a courtroom bench pouring Jack Daniels whiskey and serving it to children. A voiceover states:

> Everyone knows that a judge would never serve alcohol to kids in a courtroom. But appellate judge Tim Cannon did something almost as bad. In the case *State versus Andrews*, Cannon ruled that cops couldn't enter a house to arrest a parent who was hosting a teenage drinking party, because he felt teenage drinking wasn't a serious crime. Cannon doesn't think teenage drinking is serious. What else does he think isn't serious? We can't afford Tim Cannon's bad judgment. Elect Ron Tamburrino to the Eleventh District Court of Appeals.

During the voiceover, the commercial shows children carousing and drinking beer out of large bottles.  Simultaneously with the narration, the following words appear on the screen:

- "Judge Cannon ruled cops couldn't arrest a parent who hosted a teenage drinking party";
- "Cannon: 'There were no exigent circumstances to justify the intrusion'  State v Andrews 177 Ohio App.3d 593 (2008)";
- "Judge Tim Cannon doesn't think teenage drinking is a serious offense"; and
- "BAD JUDGMENT."

(Capitalization sic.)

{¶ 8} In *Andrews*, the Eleventh District Court of Appeals held that police needed to obtain a warrant before entering a home without the homeowner's consent and searching a party where underage drinking was occurring.  To reach this holding, the court concluded that there were no exigent circumstances that required immediate intrusion. *Andrews* at ¶ 39.  The court noted that the noise from the party had stopped, the scene was secure around the house, no one was attempting to escape, evidence of the alcohol would not be destroyed, no one appeared to be in danger, and the homeowner was complying with a request for identification when the police officer forced his way past the homeowner into the house. *Id.* at ¶ 25, 30, and 36.

{¶ 9} In a concurring opinion, Judge Cannon stated, "While I emphasize that I do not wish to impede an officer's duties to enforce the laws against underage drinking," there was not enough evidence of "exigent circumstances to validate a warrantless forced entry and search of [the] home." *Id.* at ¶ 43 (Cannon, J., concurring).  Judge Cannon wrote that it is not a crime for parents to give alcohol to their minor children under R.C. 4301.69(E)(1) and that committing the crime of giving alcohol to other minors is not among the serious or violent crimes, the mere

4

commission of which would constitute exigent circumstances. *Id.* at ¶ 44-45. Judge Cannon noted: "While I recognize the great concern for the problems associated with contributing to inappropriate underage drinking, I must also recognize the rights afforded to an individual, secure in the environment of his or her home, by the Fourth Amendment." *Id.* at ¶ 42.

{¶ 10} On October 31, 2014, Judge Cannon's campaign issued a press release regarding both the teenage-drinking and the expense-disclosure commercials, denouncing them for containing falsehoods. The press release noted that despite a prior demand to cease and desist, Tamburrino's campaign continued to air the two commercials. Tamburrino's campaign responded with its own press release on November 1, 2014, stating that the statements made in his commercials were not false and accusing Judge Cannon of fabrications and false accusations. Tamburrino did not take either commercial off the air before the election.

## PROCEDURAL HISTORY

{¶ 11} On October 28, 2014, Malchesky, Judge Cannon's attorney and campaign treasurer, filed a grievance with the board, then known as the Board of Commissioners on Grievances and Discipline. With the election only a few days away, the board decided not to act on the grievance. The board did, however, forward the grievance to relator on October 30, 2014. Relator investigated and on October 30, 2015, notified Tamburrino that it had completed its investigation and would file a complaint.

{¶ 12} The official complaint against Tamburrino was filed on December 10, 2015. A panel of the board determined that probable cause existed and certified the complaint to the board. At a hearing on May 2, 2016, the panel received 43 exhibits and heard testimony from Tamburrino, Judge Cannon, and an additional witness from the Ohio State Bar Association.

{¶ 13} The panel found that the teenage-drinking and expense-disclosure commercials contained patently false statements of fact and that Tamburrino made

the statements either knowing that they were false or with reckless disregard of their falsity. The panel also found that Tamburrino's use of false statements was inconsistent with the independence, integrity, and impartiality of the judiciary. Accordingly, for each of the two counts, the panel concluded that Tamburrino violated Jud.Cond.R. 4.2(A)(1) (a judicial candidate shall act in a manner consistent with the independence, integrity, and impartiality of the judiciary) and 4.3(A) (a candidate shall not knowingly or with reckless disregard disseminate false information concerning an opponent). The panel recommended that Tamburrino be suspended from the practice of law for six months, stayed in full on the conditions that he commit no further misconduct and attend a six hour continuing-legal-education ("CLE") course regarding judicial campaigns. The panel also recommended assessing him the costs of the proceedings.

{¶ 14} The board adopted the findings of fact and conclusions of law of the panel. But the board determined that the recommended sanction would not adequately demonstrate to other judicial candidates the seriousness of the violations or deter similar future misconduct. The board noted that not only were there blatant falsehoods in the commercials but that Tamburrino refused to acknowledge any inappropriateness of the content. The board also warned of the chilling affect that such advertisements could have on judicial independence and the ability of a judge to freely express views in court opinions. In light of these considerations, the board increased the recommended sanction to a suspension of a full year with six months stayed.

{¶ 15} Tamburrino now objects to the board's findings and recommendations. His objections are grouped for discussion into constitutional and procedural challenges.

## CONSTITUTIONAL CHALLENGES

{¶ 16} In his first objection to the board's recommendation, Tamburrino contends that the board's decision is unconstitutional because it punishes

misleading rather than false speech, in violation of *In re Judicial Campaign Complaint Against O'Toole*, 141 Ohio St.3d 355, 2014-Ohio-4046, 24 N.E.3d 1114. In *O'Toole*, we held that Jud.Cond.R. 4.3's prohibition of false campaign speech was constitutional but that a then-existing clause of the rule did violate the First Amendment because it prohibited campaign speech that was merely misleading. *O'Toole* at ¶ 41-42. Here, Tamburrino has been charged with false speech, not misleading speech. *O'Toole*'s holding regarding misleading speech does not apply.

{¶ 17} In his fifth objection, Tamburrino argues that even the false-speech portion of Jud.Cond.R. 4.3 is unconstitutional pursuant to a Sixth Circuit decision rendered after *O'Toole*: *Susan B. Anthony List v. Driehaus*, 814 F.3d 466 (6th Cir.2016). But that decision reviewed a statute providing that it is a *crime* punishable by up to six months in prison and a $5,000 fine for *anyone* to knowingly or with reckless disregard disseminate false information about a political candidate. *See* R.C. 3517.21(B)(10) and 3517.992(V). Our judicial-conduct rules were not at issue. Moreover, the Sixth Circuit itself clarified that *Susan B. Anthony List* does not apply to disciplinary sanctions for knowingly or recklessly false statements by judicial candidates. *Winter v. Wolnitzek*, 834 F.3d 681, 693 (6th Cir.2016).

{¶ 18} It is undisputed that Jud.Cond.R. 4.3 is a content-based regulation of political speech and therefore must withstand strict scrutiny under the First Amendment to the United States Constitution. *O'Toole* at ¶ 20. The strict-scrutiny standard of review requires the rule to be narrowly tailored to promote a compelling governmental interest. *Id.* Nevertheless, unlike R.C. 3517.21(B)(10), Jud.Cond.R. 4.3 is narrowly tailored. It applies solely to judicial candidates and not to their employees, associates, or supporters—let alone members of the general public. It is supported by a compelling interest not just in maintaining fairness in a particular election but in maintaining trust in the integrity and fairness of the judiciary as a whole. *O'Toole* at ¶ 22-26. We reviewed these factors at length in *O'Toole* and

concluded that they withstood strict scrutiny. *Id.* at ¶ 26-29. We see no reason to depart in this case from our reasoning in *O'Toole*.

**{¶ 19}** In the remainder of his fifth objection, Tamburrino levels an unspecified constitutional challenge to the judicial-candidate disciplinary process in general. He asserts that alleged misconduct by judicial candidates should not be "reviewed by sitting judges and those who deal with sitting judges on a regular basis" due to the risk of bias. This appears to be a due-process argument. *See, e.g.*, *State v. Dean*, 127 Ohio St.3d 140, 2010-Ohio-5070, 937 N.E.2d 97, ¶ 48 (judicial bias implicates due process). There is no due-process or other relevant constitutional analysis in the decision that Tamburrino cites in support of this argument; instead, the case involved a state dentistry board's attempt to avoid liability under federal antitrust law for anticompetitive practices. *North Carolina State Bd. of Dental Examiners v. Fed. Trade Comm.*, __ U.S. __, 135 S.Ct. 1101, 191 L.Ed.2d 35 (2015). *Dental Examiners* mentions that six of the eight members of the dentistry board were practicing dentists, meaning that the board was controlled by active market participants. *Id.* at 1108 and 1110. But apart from the many obvious differences between Ohio's judicial-conduct rules and the federal Sherman Act, 15 U.S.C. 1 et seq., there is no controlling majority of judges on Ohio's Board of Professional Conduct. Gov.Bar R. V(1)(A) (only 7 of the 28 commissioners may be active or retired judges). *Dental Examiners* has no application here, and Tamburrino's constitutional challenge based on that case is not well taken.

**PROCEDURAL OBJECTIONS**

**{¶ 20}** In his fourth objection to the board's recommendation, Tamburrino argues that the disciplinary proceedings against him violated his due-process rights and that the complaint should be dismissed for four reasons: (1) relator's investigation was unreasonably prolonged, (2) Tamburrino's reply to the grievance was sent to Malchesky, (3) Tamburrino was punished for statements that were not

included in the complaint, and (4) the panel did not compel disclosure of certain materials requested in discovery.

{¶ 21} The boundaries of due process for attorney disciplinary proceedings are different from those in civil or criminal proceedings. *In re Judicial Campaign Complaint Against Carr*, 76 Ohio St.3d 320, 322, 667 N.E.2d 956 (1996). A disciplinary respondent's due-process rights have been adequately protected as long as the respondent has been "afforded a hearing, the right to issue subpoenas and depose witnesses, and an opportunity for preparation to explain the circumstances surrounding his actions." *Disciplinary Counsel v. Character*, 129 Ohio St.3d 60, 2011-Ohio-2902, 950 N.E.2d 177, ¶ 76.

### Investigative delay

{¶ 22} Tamburrino also argues that relator's investigation violated the time limit established in Gov.Bar R. V(9)(D). In order to dismiss a complaint for investigational delay, there must be a showing that the delay was unreasonable "and that the rights of the respondent to have a fair hearing have been violated." Gov.Bar R. V(9)(D)(3). An investigation exceeding "one year from the date of filing" of the grievance is "prima facie evidence of unreasonable delay." *Id.*

{¶ 23} The parties do not dispute that the grievance against Tamburrino was filed on October 28, 2014, that it was received by relator on October 30, 2014, and that relator's investigation was completed on October 30, 2015. Gov.Bar R. V(9)(D)(3) states that the one-year limit starts on the date of *filing*; thus, relator's investigation extended past the one-year limit and is prima facie evidence of an unreasonable delay.

{¶ 24} Tamburrino has not, however, shown that he was prejudiced by the investigational delay. His only assertion of prejudice is that he might have been able to access information that might have been relevant if the investigation had been completed earlier. It is well settled that the mere possibility that evidence might have been lost does not establish prejudice from delay. *United States v.*

*Marion*, 404 U.S. 307, 325-326, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). And Tamburrino's suggestion that delay also provides prima facie evidence of prejudice is not a correct reading of the rule. Accordingly, the prejudice requirement of Gov.Bar R. V(9)(D)(3) was not met and the board did not err in declining to dismiss the complaint.

### *Tamburrino's reply sent to grievant*

{¶ 25} Tamburrino next argues that relator violated Gov.Bar R. V(8)(E) by sending his response to Malchesky despite Tamburrino's written request to relator not to do so. As a general matter, releasing a respondent's reply to the grievant is "encouraged and consistent with the liberal construction of this rule for the protection of the public." Gov.Bar R. V(8)(E). But if a respondent requests in writing that the reply not be sent to the grievant, relator "shall not" do so. *Id.* Relator concedes error and asserts that it was unintentional. Again, though, Tamburrino does not establish that this error caused any actual prejudice to his proceedings. We therefore find it harmless.

{¶ 26} Tamburrino notes that the original grievance identified only the expense-disclosure commercial, and he contends that the "strength of [his] initial response" inspired Judge Cannon's campaign to find new bases for ethics complaints against him as a form of political retaliation. Tamburrino concludes that there would have been no charges regarding the teenage-drinking commercial but for Malchesky's receipt of Tamburrino's reply. There is no support in the record for Tamburrino's accusation of political retaliation. In fact, the record shows that Tamburrino himself brought the teenage-drinking commercial to relator's attention in Tamburrino's reply. Relator had the authority to "investigate any matter filed with it *or that comes to its attention* and may file a complaint pursuant to this rule in cases where it finds probable cause to believe that misconduct has occurred." (Emphasis added.) Gov.Bar R. V(9)(C)(1). Tamburrino has failed to establish any causal connection between relator's inadvertent disclosure of

10

Tamburrino's reply to Malchesky and relator's investigation of the teenage-drinking commercial. This argument is not well taken.

### *Uncharged violations*

**{¶ 27}** Tamburrino also argues that the board violated his due-process rights by finding violations that were never charged. He notes that only one statement— "Cannon doesn't think teenage drinking is serious"—is mentioned in the complaint in support of the alleged violation of Jud.Cond.R. 4.3(A) in connection with the teenage-drinking commercial. Yet the board determined that five additional statements made in the teenage-drinking commercial were false: two additional statements regarding Judge Cannon's view that teenage drinking was not serious, two statements regarding police authority to enter a home and arrest an occupant, and one statement equating Judge Cannon's statement of opinion with committing a crime.

**{¶ 28}** The board is not necessarily limited to the allegations stated in the complaint "in finding violations based on all the evidence if the respondent has fair notice of the charged misconduct." Gov.Bar R. V(10)(E)(1)(a). But regardless, the foregoing findings of fact by the board do not constitute findings of additional, uncharged violations. The board concluded from the teenage-drinking commercial that Tamburrino committed one violation of Jud.Cond.R. 4.3(A) in connection with that commercial, as originally charged. Tamburrino's third argument fails to identify any due-process infirmity.

### *Undisclosed discovery*

**{¶ 29}** Finally, Tamburrino claims a due-process violation arising from a discovery ruling by the panel. During discovery, Tamburrino requested written communications between Judge Cannon and Malchesky. The parties contested whether those communications were protected by the attorney-client privilege and whether they would be relevant to Tamburrino's disciplinary proceedings. Judge Cannon provided a privilege log, and the panel eventually conducted an in camera

review of the materials. The panel determined that none of the undisclosed documents were relevant to the proceedings. As a result, it did not compel Judge Cannon to disclose them. Tamburrino did not object or request that the documents be preserved for review under seal at that point or later at the hearing. He did request two weeks after the hearing that the undisclosed documents be made part of the record, but under Gov.Bar R. V(12), evidence is to be presented at the hearing. We conclude that Tamburrino has waived this final procedural objection.

{¶ 30} Considering the totality of the proceedings in this case, we do not find that Tamburrino's due-process rights were inadequately protected as measured by the due-process standard of *Character*, 129 Ohio St.3d 60, 2011-Ohio-2902, 950 N.E.2d 177, at ¶ 76.

## MISCONDUCT

{¶ 31} With respect to the merits of the complaint, we first observe that when the teenage-drinking and expense-disclosure commercials were aired, Tamburrino was a judicial candidate who was obligated to comply with the Code of Judicial Conduct. Jud.Cond.R. 4.3 provides:

> During the course of any campaign for nomination or election to judicial office, a *judicial candidate*, by means of campaign materials, including sample ballots, advertisements on radio or television or in a newspaper or periodical, electronic communications, a public speech, press release, or otherwise, shall not *knowingly* or with reckless disregard do any of the following:
>
> (A) Post, publish, broadcast, transmit, circulate, or distribute information concerning the *judicial candidate* or an opponent, either *knowing* the information to be false or with a reckless disregard of whether or not it was false[.]

(Italics sic.) And Jud.Cond.R. 4.2(A)(1) provides that "[a] *judicial candidate* shall be responsible for * * * [a]cting at all times in a manner consistent with the *independence*, *integrity*, and *impartiality* of the judiciary." (Italics sic.)

### Count one—The teenage-drinking commercial

{¶ 32} Count one of the complaint focuses on the second of the two commercials that Tamburrino's campaign aired during the final days of the 2014 election. The commercial claimed that "[Judge] Cannon doesn't think teenage drinking is serious." In his second objection to the board's recommendation, Tamburrino argues that the statement was true.

{¶ 33} But Judge Cannon's concurring opinion in *Andrews*, upon which Tamburrino relies, does not state that teenage drinking is not serious. Instead, Judge Cannon wrote that whether the offense occurring on a property is a misdemeanor or a felony is relevant in determining whether exigent circumstances exist to justify a warrantless search of the property. *Andrews*, 177 Ohio App.3d 593, 895 N.E.2d 585, at ¶ 44 (Cannon, J., concurring). And the meaning of "exigent circumstances" provided by the majority opinion's author and supplemented by Judge Cannon is confined to " 'only a few emergency conditions,' " *id.* at ¶ 23, quoting *State v. Townsend*, 11th Dist. Lake No. 98-L-036, 1999 WL 689934, *3 (Aug. 27, 1999), in which there is a " ' "compelling necessity for immediate action," ' " *id.* at ¶ 43 (Cannon, J., concurring), quoting *State v. Martin*, 1st Dist. Hamilton No. C-040150, 2004-Ohio-6433, ¶ 19, quoting *United States v. Adams*, 621 F.2d 41, 44 (1st Cir.1980). In other words, Judge Cannon indirectly stated that committing the crime of contributing to the delinquency of a minor, by furnishing alcohol to minors, is not in itself an exigent circumstance, i.e., an emergency condition. Although he implied that teenage drinking is not an emergency situation that requires immediate action, he neither stated nor implied that it is not serious. Thus, the statement "Cannon doesn't think teenage drinking is serious," by itself,

is false.[1]  Information would have to be added to make the statement true, and the commercial failed to do so.

{¶ 34} Further evidence of the falsity of the statement "Cannon doesn't think teenage drinking is serious" can be found in other language in Judge Cannon's opinion.  In particular, Judge Cannon wrote: "I recognize the great concern for the problems associated with contributing to inappropriate underage drinking," *id.* at ¶ 42 (Cannon, J., concurring), and "I emphasize that I do not wish to impede an officer's duties to enforce the laws against underage drinking," *id.* at ¶ 43 (Cannon, J., concurring).  It is beyond question that judges are perennially charged with carefully balancing rights and duties that are in competition with one another, particularly the Fourth Amendment rights of individuals and the duties of police officers.  *See, e.g.*, *Wyoming v. Houghton*, 526 U.S. 295, 299-300, 119 S.Ct. 1297, 143 L.Ed.2d 408 (1999).  The fact that a judge's analysis may end with the scale tilting to one side does not mean that the judge viewed the other side as having no value.  It is no more valid to conclude that a judge is biased against a particular party after ruling against that party.  *See In re Disqualification of Fuerst*, 134 Ohio St.3d 1267, 2012-Ohio-6344, 984 N.E.2d 1079, ¶ 14 ("a judge's adverse rulings, even erroneous ones, are not evidence of bias or prejudice").  By ignoring these obvious indicators that the statement "Cannon doesn't think teenage drinking is serious" was untrue, Tamburrino was, at a minimum, reckless about the falsity of the statement.

{¶ 35} Finally, after Tamburrino's campaign began airing the teenage-drinking commercial, he was put on actual notice that the statement was false by

---

[1] Contrary to the position taken by the dissent, a different result is not required by *Winter*, 834 F.3d 681.  The disciplinary count against Tamburrino concerning Cannon's statement about teenage drinking does not involve the meaning of a specific word that may be readily capable of more than one definition.  Instead, Cannon's conditional statement was turned falsely into an absolute statement.  For example, a statement that explains "the sky is green if you view it through yellow-colored glasses" would be falsely reported as "the speaker believes the sky is not blue."

Judge Cannon's press release stating that it was false. But Tamburrino continued to allow the advertisement to appear on television. At that point, any question of recklessness was gone and certainly Tamburrino was broadcasting a statement that he knew to be false.

{¶ 36} There was clear and convincing evidence to support the board's conclusion that Tamburrino violated Jud.Cond.R. 4.3(A) and 4.2(A)(1) in connection with the teenage-drinking commercial. The teenage-drinking commercial contained a patently false statement about Judge Cannon, and Tamburrino acted knowingly or recklessly about its falsity. Furthermore, to use such false statements to denigrate a judge, particularly to denigrate a judge for conducting legal analysis, is conduct that is not consistent with the independence, integrity, and impartiality of the judiciary.

### Count two—The expense-disclosure commercial

{¶ 37} Count two of the complaint focuses on the commercial that Tamburrino aired a few weeks before the November 2014 election. The commercial claimed that "[Judge] Cannon won't disclose his Taxpayer Funded Travel Expenses." In his second objection to the board's recommendation, Tamburrino argues that the statement was true.

{¶ 38} The evidence presented at Tamburrino's hearing showed that Judge Cannon has consistently disclosed his expenses to this very court and that no request for disclosure of the expenses was made to Judge Cannon.

{¶ 39} Tamburrino argues from two angles that the statement is not false. First, he claims that by "disclose" he meant post the travel expenses as part of a detailed budget and expense summary of the entire Eleventh District Court of Appeals, including expenses funded by outside state agencies, on the appellate court's website. As with the first count, the statement here that "Cannon won't

disclose his Taxpayer Funded Travel Expenses," by itself, is false.[2] An enormous amount of information would need to be added in order to make the statement true in the way that Tamburrino claims. The commercial did not provide that information.

{¶ 40} Alternatively, Tamburrino argues that the statement is merely an opinion about what he thinks Judge Cannon would do in the future if he were asked to produce copies of his travel-expense documentation. Predicting that Judge Cannon would violate public-records laws by denying such a request is an inflammatory accusation. But for our purposes, nothing about the statement indicates that it is a prediction. The commercial listed the statement among other alleged facts about Judge Cannon, including his reversal rate at this court and the number of days a year that he sits for oral arguments.

{¶ 41} Moreover, as with the first count, Tamburrino was put on actual notice that the statement was false when Judge Cannon's campaign treasurer notified him in writing that it was false as well as when Judge Cannon publicly stated that it was false. And again, Tamburrino continued to allow the commercial to be run, at which point any question of recklessness was gone and it was certain that Tamburrino had broadcasted the statement knowing it to be false.

{¶ 42} We hold that there was clear and convincing evidence to support the board's conclusion that Tamburrino violated Jud.Cond.R. 4.3(A) and 4.2(A)(1) in connection with the expense-disclosure commercial. The commercial contained a patently false statement about Judge Cannon, and Tamburrino acted knowingly or recklessly about its falsity. Furthermore, to use such false statements to insinuate

---

[2] The dissent's suggestion that "won't disclose" is readily capable of being interpreted as "did not voluntarily post on a website" is quite a stretch. Given the context of a public official, the most readily understandable definition of "disclose" is to respond to a public-records request pursuant to R.C. 149.43.

a judge's violation of public-records laws is conduct that is not consistent with the independence, integrity, and impartiality of the judiciary.

## SANCTION

{¶ 43} When considering the appropriate sanction for Tamburrino's violations of the Code of Judicial Conduct, we consider factors including the duties violated, the harm caused, Tamburrino's mental state, other relevant aggravating and mitigating circumstances, and sanctions imposed in similar cases. *Disciplinary Counsel v. Weithman*, 143 Ohio St.3d 84, 2015-Ohio-482, 34 N.E.3d 865, ¶ 19; Gov.Bar R. V(13)(A). This list is not exhaustive, though, as we are permitted to consider "all relevant factors" in determining what sanction to impose. Gov.Bar R. V(13)(A).

{¶ 44} *O'Toole* explains our purpose in determining and imposing sanctions against judicial candidates:

"[T]he primary purpose of disciplinary sanctions is not to punish the offender, but to protect the public." *Disciplinary Counsel v. O'Neill,* 103 Ohio St.3d 204, 2004-Ohio-4704, 815 N.E.2d 286, ¶ 53.

We have also found that these sanctions serve as a deterrent to similar violations by judicial candidates in future elections. *In re Judicial Campaign Complaint Against Brigner*, 89 Ohio St.3d 1460, 732 N.E.2d 994 (2000), citing *In re Judicial Campaign Complaint Against Morris*, 81 Ohio Misc.2d 64, 65, 675 N.E.2d 580 (1997). Perhaps particularly important here, we have recognized that sanctions inform the public of the self-regulating nature of the legal profession and enhance public confidence in the integrity of judicial proceedings. *See, e.g.*, *In re Judicial Campaign Complaint Against Be[e]ry*, 2009-Ohio-113. We believe that the public's faith in the

disciplinary proceedings against judges and judicial candidates is fostered by sanctions that reflect the unique injuries inflicted on the public by judges and judicial candidates who are not truthful in the information they disseminate. *In re Judicial Campaign Complaint Against Per Due*, 98 Ohio St.3d 1548, 2003-Ohio-2032, 787 N.E.2d 10 ("The purpose of sanctions is to inform other judicial candidates of the seriousness of such violations and to deter future similar misconduct. A sanction that may result in effective deterrence best serves the public interest and the profession").

*O'Toole*, 141 Ohio St.3d 355, 2014-Ohio-4046, 24 N.E.3d 1114, at ¶ 63-64.

### *Aggravating and mitigating factors*

{¶ 45} In mitigation, the board agreed with the panel's findings that Tamburrino had no prior disciplinary record and was cooperative during the proceedings. *See* Gov.Bar R. V(13)(C)(1) and (4). As for aggravating factors, the panel found that Tamburrino committed multiple violations by airing two commercials on multiple occasions, that he timed them to deprive Judge Cannon of the opportunity to counter their effect, and that he expressed no remorse or regret for any of his actions. *See* Gov.Bar R. V(13)(B)(4). The board additionally noted that Tamburrino failed to acknowledge that the commercials were inappropriate and that such misconduct would have a "chilling effect * * * on judicial independence * * * and the ability of a judge to freely express his or her views in court opinions." *See* Gov.Bar R. V(13)(B)(7).

{¶ 46} In his third objection to the board's recommendation, Tamburrino disputes the aggravating factors found by the board and asserts that the board failed to consider his unblemished, 33-year record as a mitigating factor. As for the latter argument, the board did recognize his unblemished attorney record as a mitigating factor. But given that this was Tamburrino's first time running for judicial office,

he lacked any record in the more relevant arena of judicial conduct to use as mitigation.

{¶ 47} Upon review of the record, we agree with the board's findings regarding aggravating factors. Of particular note, we agree with the finding of a lack of remorse and disagree with Tamburrino's contention that considering this factor punishes him for merely presenting a defense to the charges. The problem is not that Tamburrino denied the charges that he crossed the line into knowing falsehoods; it is that Tamburrino denied that he even came close to the line and attacked those who said otherwise.

{¶ 48} After Judge Cannon denounced Tamburrino's teenage-drinking commercial, Tamburrino accused Judge Cannon—as well as the author of the majority opinion in *Andrews*, Judge Mary Jane Trapp—of "mak[ing] up their own facts * * * to support the court's opinion." Tamburrino had never reviewed the record in *Andrews* yet insisted to the public that the two judges "ignore[d] sworn testimony or other facts, fabricate[d] facts, and then issue[d] a court opinion based on those fabricated facts to overrule a trial court judge's decision." He continued to accuse Judge Cannon of further misdeeds, stating that the judge "won't post decisions like State v. Andrews on the [Eleventh District Court of Appeals'] web site for the public to view. What else is he hiding from them?"

{¶ 49} Tamburrino also lodged attacks against the Ohio State Bar Association ("OSBA") Board of Governors Government Relations Committee, which had issued a letter criticizing Tamburrino's teenage-drinking commercial as being contrary to the OSBA's Unjust Criticism of Judges protocol. Tamburrino accused the OSBA of being "nothing more than a Secret Society of Lobbyists in Columbus masquerading as lawyers supporting Cannon's campaign on Halloween" and claimed that the OSBA's action was "orchestrated in a smoke filled room in Columbus by supporters of Cannon's campaign, and nothing else."

**{¶ 50}** Tamburrino continues to contend that he had every right to make the statements contained in his commercials and that they are true. His failure to acknowledge the inappropriateness of the commercials and his readiness to cast aspersions on critics soundly supports the board's finding of lack of remorse.

### Lack of applicable precedent

**{¶ 51}** In the remainder of his third objection to the board's recommendation, Tamburrino points out that no other judicial-campaign disciplinary proceeding has resulted in an actual suspension. Although he argues that he should receive no penalty at all, he alternatively argues that his sanction should not exceed any of the sanctions imposed in *O'Toole*, 141 Ohio St.3d 355, 2014-Ohio-4046, 24 N.E.3d 1114 (public reprimand); *Disciplinary Counsel v. Evans*, 89 Ohio St.3d 497, 733 N.E.2d 609 (2000) (stayed six-month suspension); *In re Judicial Campaign Complaint Against Hildebrandt*, 82 Ohio Misc.2d 1, 675 N.E.2d 889 (1997) (stayed six-month suspension); *In re Complaint Against Harper*, 77 Ohio St.3d 211, 673 N.E.2d 1253 (1996) (public reprimand); *In re Judicial Campaign Complaint Against Burick*, 95 Ohio Misc.2d 1, 705 N.E.2d 422 (1999) (public reprimand); and *In re Judicial Campaign Complaint Against Roberts*, 81 Ohio Misc.2d 59, 675 N.E.2d 84 (1996) (fine). None of the foregoing cases involved conduct as egregious as the conduct in this case, and thus they do not require us to reduce the sanction recommended by the board.

**{¶ 52}** This case does not involve false statements to merely make Tamburrino appear as though he had better credentials or more endorsements. Thus, cases involving false or misleading information for purposes of self-aggrandizement do not provide guidance for an appropriate sanction in this case. *See O'Toole* (candidate falsely claimed to be a currently sitting judge); *Evans* (candidate misrepresented endorsements); *Roberts* (candidate implied that he was an incumbent judge and exaggerated endorsements). Here, Tamburrino used false statements to impugn the integrity of his opponent.

**{¶ 53}** In *Harper*, the judicial candidate received a public reprimand for publishing an advertisement that insinuated that her opponent was receiving improper contributions from dishonest attorneys. In *Hildebrandt*, the judicial candidate was sanctioned with a stayed six-month suspension after publishing a true but misleadingly incomplete description of an opponent's history of election wins and losses as well as a misleading interpretation of a second-hand report of the opponent's voting record on the death penalty. As unseemly as the insinuations may have been in *Harper* and as misleading as the half-truths may have been in *Hildebrandt*, they do not rise to the level of the patent falsehoods in this case. Thus, the public reprimand issued in *Harper* and stayed suspension issued in *Hildebrandt* would not be adequate here.

**{¶ 54}** In *Burick*, the judicial candidate received a public reprimand after she touted her pro-death penalty stance, referred to her opponent's gubernatorial appointment to the bench as an appointment by "political bosses," *Burick*, 95 Ohio Misc.2d at 5, 705 N.E.2d 422, and, most relevant to this case, allowed a survey to be conducted on her behalf that falsely represented facts of a recent criminal case over which her opponent had presided. The candidate's campaign commissioned a political survey to be conducted by a third party and provided materials including her opponent's sentencing order in the recent case. *Id.* at 13-14. The order imposed the maximum sentence after the defendant pled guilty to one count of sexual battery, but the survey described the defendant as a serial rapist who was sentenced to "only five years" in prison. *Id.* at 8. The candidate ultimately admitted that the statement was incorrect but pleaded ignorance due to lack of oversight of the survey. *Id.* at 13.

**{¶ 55}** The circumstances in *Burick* do not reach the level of this case. Tamburrino's multiple, separately broadcasted false statements regarding Cannon's expense disclosures and views on teenage drinking were much more direct in their origins than the alleged oversight in *Burick*, and Tamburrino ultimately made no

concession about their inaccuracy. They were also disseminated on a much larger scale—in television commercials—than to a limited audience of survey respondents.

{¶ 56} The statement "Cannon doesn't think teenage drinking is serious" is a false factual declaration that imputes Judge Cannon's view about a particular offense that would certainly arise in future cases at the Eleventh District Court of Appeals. And the statement "Cannon won't disclose his Taxpayer Funded Travel Expenses" necessarily implies that Cannon has violated public-records laws.

{¶ 57} Tamburrino's misconduct impugned the integrity of his opponent as a jurist and as a public servant. It endangered the independence of the judiciary and lessened the public's understanding of public records and the protections of the Fourth Amendment. We agree with the board that an actual suspension is necessary in this case.

## CONCLUSION

{¶ 58} Having considered Tamburrino's violations, the applicable aggravating and mitigating factors, and the sanctions imposed in comparable cases, we adopt the board's recommended sanction. Ronnie Michael Tamburrino is hereby suspended from the practice of law for one year, with the final six months stayed on the conditions that he commit no further misconduct and attend a six-hour CLE course regarding judicial campaigns. If Tamburrino fails to comply with either condition of the stay, the stay will be lifted and he will serve the entire one-year suspension. Costs are taxed to Tamburrino.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER and O'NEILL, JJ., concur.

O'DONNELL, J., concurs in judgment only.

FRENCH, J., dissents, with an opinion joined by KENNEDY, J.

_____

**FRENCH, J., dissenting.**

**{¶ 59}** The majority concludes that Tamburrino made two false campaign statements in violation of Jud.Cond.R. 4.3(A). I respectfully dissent. Although the statements are unquestionably distasteful, I would conclude that they are reasonably susceptible to truthful interpretations and, therefore, that relator, disciplinary counsel, failed to prove that they are false under the heightened standard the First Amendment requires.

**{¶ 60}** We have recognized that the state has a compelling interest in preserving public confidence in the integrity of its judiciary and may regulate judicial elections differently than it regulates other political elections. *See In re Judicial Campaign Against O'Toole,* 141 Ohio St.3d 355, 2014-Ohio-4046, 24 N.E.3d 1114, ¶ 22. But the political speech of a judicial candidate still commands the highest level of First Amendment protection as core political speech about the qualifications of candidates for public office. *See Republican Party of Minnesota v. White*, 536 U.S. 765, 774, 122 S.Ct. 2528, 153 L.E.2d 694 (2002) (applying strict scrutiny to state judicial-conduct rule prohibiting judicial candidates from announcing views on disputed legal or political issues). If the state chooses to elect its judges, "the First Amendment does not permit it to achieve its goal by leaving the principle of elections in place while preventing candidates from discussing what the elections are about." *Id.* at 788.

**{¶ 61}** The First Amendment protects even false statements to some degree. *See United States v. Alvarez*, __ U.S. __, 132 S.Ct. 2537, 2545, 183 L.Ed.2d 574 (2012) (plurality opinion). Certainly, "some false statements are inevitable if there is to be an open and vigorous expression of views in public and private conversation, expression the First Amendment seeks to guarantee." *Id*. at 2544, citing *New York Times Co. v. Sullivan,* 376 U.S. 254, 271, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). To that expressive end, the state may not prohibit false speech unless it is a knowing or reckless falsehood. *Alvarez* at 2545, citing *Sullivan* at 280. And

in order to survive strict scrutiny, the government must show why "counterspeech" would not achieve the same goal. *Id*. at 2549.

{¶ 62} Because Jud.Cond.R. 4.3 purports to prohibit only false statements made knowingly or with a reckless disregard for falsity, I agree with the majority that the rule survives facial constitutional scrutiny. *See* majority opinion at ¶ 18, citing *O'Toole* at ¶ 26-29. By refusing to acknowledge, however, that Tamburrino's statements were readily susceptible to a truthful interpretation, the majority's application of the rule violates his free-speech rights. *See Winter v. Wolnitzek*, 834 F.3d 681, 693, (6th Cir.2016).

{¶ 63} In *Winter*, the United States Court of Appeals for the Sixth Circuit evaluated the constitutionality of Kentucky's canon of judicial conduct that, like Ohio's Jud.Cond.R. 4.3, prohibits judicial candidates from making a false statement during a campaign, either knowingly or with reckless disregard for the truth of the statement. The court held that the rule was facially valid, but that the state's application of the rule violated one candidate's First Amendment rights because her statement asking voters to "re-elect" her was "readily capable of a true interpretation." *Winter* at 693. The governor had originally appointed the candidate to a judicial seat; she had not been elected to it and therefore in that sense, could not seek re-election. But the term fairly could also mean "to elect for another term in office"—precisely what the candidate was seeking. *Id*. On these grounds, the court concluded that the state's judicial-conduct rule, when applied to a statement "readily capable of a true interpretation * * * fails to give candidates the 'breathing space' necessary to free debate." *Id*., quoting *Brown v. Hartlage*, 456 U.S. 45, 60-61, 102 S.Ct. 1523, 71 L.Ed.2d 732 (1982).

{¶ 64} This court has similarly recognized that statements deserve protection if they are "reasonably susceptible of an innocent construction." (Emphasis deleted.) *McKimm v. Ohio Elections Comm*., 89 Ohio St.3d 139, 146, 729 N.E.2d 364 (2000). In other words, if we can give allegedly defamatory words

two meanings—one defamatory and one innocent—then we have to reject the defamatory meaning and adopt the innocent one. *Id*., quoting *Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 6 Ohio St.3d 369, 372, 453 N.E.2d 666 (1983), *abrogated on other grounds*, *Welling v. Weinfeld*, 113 Ohio St.3d 464, 2007-Ohio-2451, 866 N.E.2d 1051. And we make that judgment from the vantage point of a "reasonable" reader or listener. *McKimm* at 143.

**{¶ 65}** Here, the statements contained in counts one and two against Tamburrino are reasonably susceptible to truthful interpretations. Count one concerns Tamburrino's statement that "Cannon doesn't think teenage drinking is serious." Considering the statement in the context of Judge Cannon's concurring opinion in *State v. Andrews*, 177 Ohio App.3d 593, 2008-Ohio-3993, 895 N.E.2d 585 (11th Dist.), a reasonable viewer of the advertisement could have interpreted the statement as, at least, having a basis in truth. Judge Cannon agreed with the majority opinion in *Andrews* that there was insufficient evidence of exigent circumstances to validate a warrantless search of a home in which a police officer observed underage drinking. *Id.* at ¶ 43 (Cannon, J., concurring). But Judge Cannon wrote separately to address the seriousness of the underlying offense of contributing to the delinquency of a minor and its relevance to determining whether the police may enter a home without a warrant:

> The majority opinion also indicates that there is no need to address the fact that the instant offense is a misdemeanor versus a felony, because there were no "exigent circumstances" to justify the intrusion. *I, however, believe the fact that the instant offense is a misdemeanor charge is of particular importance,* because it is a factor to consider in making the assessment of whether exigent circumstances exist. I would want nothing in this decision to deter

an officer from exercising his duty if he clearly observes *a serious misdemeanor offense or an offense of violence*, or if he has other good cause to make an intrusion.

(Emphasis added.)  *Id*. at ¶ 44 (Cannon, J., concurring).

{¶ 66} Judge Cannon's opinion uses the word "serious" to make a distinction between a "misdemeanor charge" and "a serious misdemeanor offense or an offense of violence."  In Judge Cannon's view, the misdemeanor charge in *Andrews* for contributing to the delinquency of a minor did not justify the warrantless entry, but a "serious misdemeanor offense" would provide sufficient justification.  A reasonable reader could conclude that Judge Cannon did not consider the charged offense to be a "serious misdemeanor offense."

{¶ 67} Granted, Tamburrino's teenage-drinking ad did not explain the full context of Judge Cannon's opinion.  However, a statement is not false "if, even though it is misleading and fails to disclose all relevant facts, the statement has some truth in it." *Serv. Emps. Internatl. Union Dist. 1199 v. Ohio Elections Comm*., 158 Ohio App.3d 769, 2004-Ohio 5662, 822 N.E.2d 424, ¶ 18 (10th Dist.), citing *In re Pirko*, 44 Ohio App.3d 3, 5, 540 N.E.2d 329 (10th Dist.1988).  *Accord Susan B. Anthony List v. Driehaus*, 779 F.3d 628, 633 (6th Cir.2015).  The "gist or sting" of Tamburrino's statement in the ad "appears to have at least some truth, to be substantially true, or to be subject to differing interpretations." *Id*.

{¶ 68} Count two concerns Tamburrino's statement in his expense-disclosure ad that "Cannon won't disclose his Taxpayer Funded Travel Expenses." This statement too is reasonably susceptible to a truthful interpretation.  Relator alleged that the statement is false because no one had asked Judge Cannon to disclose or produce his travel expenses.  Tamburrino offered another interpretation: that Judge Cannon did not post his travel expenses on the website of the Eleventh District Court of Appeals, even though Tamburrino was campaigning on the issue

of posting judges' salaries and expenses on the court's website. At some point, Judge Cannon arranged for the court to post a summary of its expenses on its website, but he did not post his travel-expense reports. When viewing Tamburrino's expense-disclosure ad in this context, a reasonable viewer of the ad could have construed Tamburrino's statement as true. The majority isolates the statement from the context of the campaign and concludes that "by itself" it is false because "[a]n enormous amount of information would need to be added in order to make the statement true in the way that Tamburrino claims." Majority opinion at ¶ 39. But once again, a statement reasonably susceptible to a truthful interpretation, even if fails to disclose all relevant factual context, is not false.

{¶ 69} I also disagree with the majority's conclusion that Tamburrino acted with the requisite mens rea—i.e., that he made both statements with reckless disregard for their falsity. The majority concludes that Tamburrino "was put on actual notice" because Judge Cannon or his campaign representative had notified Tamburrino that the statements were false, and yet, Tamburrino continued to broadcast ads containing them. Majority opinion at ¶ 35. That is not recklessness—it is political discourse. Relying on his own free-speech rights, Judge Cannon challenged his opponent's campaign statements; Tamburrino responded by disagreeing with his opponent's characterizations and standing by his statements.

{¶ 70} To be clear, I dislike this type of political speech, particularly in a judicial campaign. I give no credence to Tamburrino's statements about his opponent, and neither, apparently, did the voting public, who re-elected Judge Cannon in 2014. But we must protect speech even when—and, perhaps, especially when—we dislike it. *See Alvarez*, __ U.S. __, 132 S.Ct. at 2551, 183 L.Ed.2d 574. Even " 'vehement, caustic,' " and " 'unpleasantly sharp attacks' " leveled at candidates for public office enjoy "breathing space" under the First Amendment. *McKimm*, 89 Ohio St.3d at 147, 729 N.E.2d 364, quoting *Sullivan,* 376 U.S. at 270, 84 S.Ct. 710, 11 L.Ed.2d 686. When, as here, one candidate's statement about his

or her opponent involves core political speech susceptible to a truthful interpretation, the better course is to let the candidates themselves publicly debate the truthfulness of the statement, rather than attempting to act as a truth-declaring forum and penalizing candidates for the exercise of their free-speech rights.

{¶ 71} For these reasons, I respectfully dissent and would dismiss the charges against Tamburrino.

KENNEDY, J., concurs in the foregoing opinion.

_____

Scott J. Drexel, Disciplinary Counsel, and Joseph M. Caligiuri, Chief Assistant Disciplinary Counsel, for relator.

Taft, Stettinius & Hollister, L.L.P., and Donald C. Brey, for respondent.

_____