DISCIPLINARY COUNSEL *v.* GALLO.

[Cite as *Disciplinary Counsel v. Gallo,* **131 Ohio St.3d 309, 2012-Ohio-758.**]

*Attorney misconduct, including recklessly making false statements concerning the integrity of a judicial officer—Public reprimand.*

(No. 2011-0756—Submitted September 21, 2011—Decided February 29, 2012.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 09-087.

_____

**Per Curiam**.

{¶ 1}  Respondent, Nicholas Matthew Gallo of Cleveland, Ohio, Attorney Registration No. 0083226, was admitted to the practice of law in Ohio in 2008. On December 7, 2009, relator, disciplinary counsel, charged Gallo with professional misconduct based on allegations he had made against a judge in an affidavit and in a motion to strike the judge's motion to intervene in a domestic-relations case.  The Board of Commissioners on Grievances and Discipline found that Gallo had recklessly made false statements impugning the integrity of a judge and recommends that we publicly reprimand him for this misconduct.

{¶ 2}  Gallo objects to the board's findings of fact and conclusions of law, arguing that due to his inexperience, he made an innocent mistake in identifying a man standing outside the judge's judicial suite as the judge himself and that he had had a good-faith basis for the allegations he made against the judge.  Therefore, he urges the court to reject the board's findings and dismiss the complaint against him.

{¶ 3}  The record clearly and convincingly demonstrates that Gallo failed to take reasonable steps to verify that the person who he thought was staring at his

client was in fact the judge he accused.  Therefore, we adopt the board's findings of fact and conclusions of law and publicly reprimand Gallo for his misconduct.

**Misconduct**

{¶ 4}  In January 2009, Gallo was hired as an associate attorney at Stafford & Stafford Co., L.P.A., a small firm in Cleveland that handles mainly domestic-relations cases.  On June 3, 2009, he stepped in to handle a pretrial conference representing Jeffery Rymers, whom the firm represented in a divorce proceeding pending in the Lake County Court of Common Pleas.  At that time, Gallo had been practicing for only about six months, although he had been admitted to the bar for just over one year.  He had never met Mr. Rymers, Mrs. Rymers, or Mrs. Rymers's attorney, and he had never been to the Lake County Courthouse.  He was, however, aware that Mrs. Rymers was in a relationship with Lake County Common Pleas Court Judge Eugene Lucci.

{¶ 5}  While Gallo waited in the hall outside the domestic-relations courtroom, which is just across the hall from Judge Lucci's judicial suite, he saw a man repeatedly exit Judge Lucci's judicial suite, look around the hall, and then re-enter the judicial suite.  When Mr. Rymers appeared, Gallo met him and walked down the hall with him to discuss the case.  As they were talking, Mrs. Rymers's counsel approached them and handed Gallo a copy of Judge Lucci's motion to intervene in the Rymerses' divorce proceeding.  Gallo quickly read through the document and phoned his boss, Joseph Stafford, to determine how he should proceed.  During that conversation, Gallo described the man he had seen in the hallway and Stafford told him that the description "sound[ed] like Judge Lucci."  After ending the phone call, Gallo resumed talking to Mr. Rymers.  Gallo's back was to Judge Lucci's judicial suite, and Mr. Rymer was facing him.  At one point, Mr. Rymers told him that Judge Lucci was standing outside the judicial suite looking in their direction.  Gallo turned around and saw that the same man he had seen earlier was staring in their direction.

2

**{¶ 6}** When Gallo returned to his office after the pretrial conference, he prepared a memorandum for his supervisors summarizing the events that occurred at the courthouse. Two weeks later, Gallo filed a response to Lucci's motion to intervene and argued that intervention was prohibited by Civ.R. 75(B). He also argued that Lucci had violated Jud.Cond.R. 1.3 by "improperly using his position as presiding Judge to advance his own personal interests, by attempting to insert himself into an action in which he has no legitimate interest." He further asserted that Lucci had violated Prof.Cond.R. 3.3 by (1) failing to cite in his motion to intervene controlling law (Civ.R. 75(B)) that Lucci knew was directly adverse to his intervening in the divorce proceeding and (2) "engag[ing] in a pattern of harassing and threatening conduct toward the Defendant, Jeffery G. Rymers, and Joseph G. Stafford; and hav[ing] intimated on numerous occasions these threats, based upon [Lucci's] position as a presiding Judge in the Lake County Court of Common Pleas."

**{¶ 7}** Gallo supported these allegations with affidavits from himself and Mr. Rymers attesting that on the day of the pretrial hearing, they had seen Judge Lucci standing in the hallway outside his judicial suite, staring at Mr. Rymers. Mr. Rymers further attested that he had felt intimidated and threatened by this conduct. Gallo also submitted an affidavit from Stafford addressing Judge Lucci's allegation that Stafford's representing Mr. Rymers was a conflict of interest because Lucci had consulted Stafford regarding his divorce. Gallo signed and filed the opposition brief on June 17, 2009. He resigned his position at Stafford's firm approximately one week later for reasons unrelated to the Rymers case.

**{¶ 8}** Judge Lucci filed a grievance with relator, stating that he had been falsely accused of abusing his office and that he had not been in the hallway while Gallo and Mr. Rymers were at the courthouse. He alleged that he had "witnesses and irrefutable, conclusive evidentiary proof" that the allegations in Gallo's and

Mr. Rymers's affidavits were not true. Gallo stood by his allegations until relator filed a formal complaint and assistant disciplinary counsel advised him that she had obtained video recordings of the activity in the Lake County Courthouse from June 3, 2009. After reviewing the video recordings, Gallo moved to withdraw his affidavit, stating that the video revealed that the person he had believed to be Judge Lucci was not, in fact, the judge, but rather the judge's bailiff.

{¶ 9} At the disciplinary hearing, the panel heard testimony from Mr. and Mrs. Rymers, Judge Lucci and his bailiff, Stafford, Gallo, and others. The panel also viewed portions of the video recordings from all four cameras that record activity in the pertinent hallway of the Lake County Courthouse. The evidence revealed that Judge Lucci had not been in the hallway during the time in question and that the man whom Gallo and Rymers had seen in the hallway was the judge's bailiff.

{¶ 10} Gallo testified that while he was standing approximately 70 feet away from the door to Judge Lucci's judicial suite talking to Mr. Rymers, he saw the man whom he then believed to be Lucci standing outside the judicial suite staring at him and Mr. Rymers. He stated that Rymers appeared very uncomfortable—his face turned bright red and he started shuffling his feet. Gallo admitted that he had never asked Mr. Rymers whether he had met Judge Lucci and that other than the information he had obtained from Rymers and Stafford, the only effort he had made to determine the identity of the man he had observed in the hall was to view Judge Lucci's picture on the Internet. He stated that he believed the picture to be consistent with the man he had observed in the courthouse that morning.

{¶ 11} The board found that Gallo had not knowingly made false statements and that he had been under considerable pressure from his employer when he filed the documents containing the accusations. However, it concluded that his conduct was not blameless. Rather, the board found that Gallo had acted

4

recklessly by failing to independently verify the identity of the man he had observed in the hallway before raising such serious allegations against Judge Lucci. Based upon these findings, the board concluded that Gallo had violated Prof.Cond.R. 8.2(a) (prohibiting a lawyer from knowingly or recklessly making false statements concerning the integrity of a judicial officer) and 8.4(d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice). Citing insufficient evidence, the board recommends that we dismiss alleged violations of Prof.Cond.R. 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation) and 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law).

### Recommended Sanction

{¶ 12} When imposing sanctions for attorney misconduct, we consider relevant factors, including the ethical duties that the lawyer violated and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in BCGD Proc.Reg. 10(B). *Disciplinary Counsel v. Broeren,* 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21.

{¶ 13} The parties did not stipulate to any aggravating or mitigating factors in this case, and the board found that no aggravating factors are present. Mitigating factors found by the board include the absence of a prior disciplinary record, the absence of a selfish or dishonest motive, Gallo's timely withdrawal of his affidavit after viewing the videotapes and discovering his mistake, and his cooperative attitude throughout the disciplinary proceeding. BCGD Proc.Reg. 10 (B)(2)(a), (b), (c), and (d). While Gallo did not submit any evidence of his character or reputation, the board observed that Stafford and another associate

from his firm spoke positively of Gallo throughout the hearing. See BCGD Proc.Reg. 10(B)(2)(e).

{¶ 14} The board also considered the fact that Gallo had voluntarily stopped practicing law as a mitigating factor, even though his departure from the practice was largely due to his inability to find work in the legal field. *See* BCGD Proc.Reg. 10(B)(2)(f). Moreover, the board concluded that Gallo's inexperience—he had been a member of the bar for only a brief period prior to his misconduct—was also a mitigating factor. See BCGD Proc.Reg. 10(B). *See also Cincinnati Bar Assn. v. Mullaney*, 119 Ohio St.3d 412, 2008-Ohio-4541, 894 N.E.2d 1210, ¶ 40-42 (considering an attorney's recent admission to the practice of law to be a mitigating factor when a more experienced attorney at his firm had established the practices that contributed to his misconduct).

{¶ 15} At the hearing, Gallo urged the panel to either dismiss the complaint against him or recommend a public reprimand for his conduct. Citing *Disciplinary Counsel v. Gardner*, 99 Ohio St.3d 416, 2003-Ohio-4048, 793 N.E.2d 425, relator sought a six-month suspension from the practice of law.

{¶ 16} The board observed that in *Gardner*, we imposed a six-month suspension from the practice of law on an attorney who, in a motion for reconsideration, had waged a vitriolic attack against the appellate court that had affirmed his client's criminal conviction, making unfounded accusations that the court was biased and corrupt. *Id.* at ¶ 2-9, 33-34. But the board found that Gallo's conduct was less egregious than Gardner's because Gallo did not impugn the integrity of the judicial process or attack the impartiality of a judge presiding over a case in which he served as counsel. Finding no evidence that Gallo is either unfit to practice law or that he is unworthy of the trust and confidence essential to an attorney-client relationship, and finding that he has accepted full responsibility for his conduct, the board concluded that he should not be

suspended from the practice of law, but should be publicly reprimanded for his misconduct.

### Gallo's Objections

**{¶ 17}** Gallo objects to the board's findings of misconduct, arguing that neither his mistaken identification of the bailiff as Judge Lucci nor his allegation that Judge Lucci had engaged in a pattern of harassing and threatening conduct was reckless. With regard to his mistaken identification, he asserts that he had no reason to believe that Mr. Rymers had not previously met Judge Lucci or to question Stafford's statement over the phone that the man Gallo described in the hallway at the courthouse was Judge Lucci.

**{¶ 18}** Gallo had not been involved in the Rymerses' divorce prior to his attendance at the June 3, 2009 pretrial hearing, and he met Mr. Rymers for the first time that morning. And yet he accepted Mr. Rymers's identification of the man in the hallway without any further inquiry. He relied upon Mr. Rymers's identification, Stafford's telephonic identification, and his own determination that the man he had seen in the courthouse matched an online photograph of Lucci as conclusive proof that the man in the hallway was Lucci.

**{¶ 19}** In *Gardner*, 99 Ohio St.3d 416, 2003-Ohio-4048, 793 N.E.2d 425, ¶ 26, we adopted an objective standard to determine whether an attorney has made a statement about a judicial officer with knowledge or reckless disregard of its falsity. Under that standard, we consider the nature of the statements and the context in which they were made and determine whether the attorney had a reasonable factual basis for making them. *Id.*

**{¶ 20}** Gallo made no effort to confirm the man's identity with anyone working at the courthouse. Nor did he ask Mr. Rymers, whom he had just met, about his familiarity with Judge Lucci. Instead, he relied upon the identification by a client he barely knew, a telephonic identification by his employer, and his own determination that the man he had seen in the courthouse matched an online

photograph of Lucci to levy serious charges of professional misconduct against a sitting judge. Furthermore, he made those allegations in a public filing in a domestic-relations court instead of in a confidential grievance submitted to disciplinary counsel or a certified grievance committee in accordance with Gov.Bar R. IV(2) (requiring a lawyer to maintain a respectful attitude toward the courts and to submit any serious complaints against judicial officers to the proper authorities) and Prof.Cond.R. 8.3(b) (requiring a lawyer who possesses unprivileged knowledge that a judge has violated the rules of professional or judicial conduct to inform the appropriate authority). Given the evidence that Gallo relied on and the minimal effort that he undertook to confirm the identity of the man in the hallway before making serious allegations against Judge Lucci, we do not find that he had a reasonable factual basis for his statements. We therefore find by clear and convincing evidence that Gallo engaged in conduct that is prejudicial to the administration of justice by recklessly making false statements impugning the integrity of Judge Lucci in violation of Prof.Cond.R. 8.2(a) and 8.4(d).

{¶ 21} Accordingly, we overrule Gallo's objections, adopt the board's findings of fact and conclusions of law in their entirety, and hereby dismiss the alleged violations of Prof.Cond.R. 8.4(c) and 8.4(h) as being unsupported by the evidence. For the reasons set forth in the board's report, we agree that the proper sanction for Gallo's misconduct is a public reprimand.

{¶ 22} Accordingly, Nicholas Matthew Gallo is hereby publicly reprimanded. Costs are taxed to Gallo.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, LANZINGER, CUPP, and MCGEE BROWN, JJ., concur.

LUNDBERG STRATTON and O'DONNELL, JJ., dissent.

_____

**LUNDBERG STRATTON, J., dissenting.**

{¶ 23} The majority concludes that Gallo failed to take reasonable steps to verify that the person who he thought was staring at his client was in fact the judge he accused. I disagree. For the reasons that follow, I dissent from the majority's decision to publicly reprimand Gallo for his conduct.

{¶ 24} Gallo had been practicing law for less than a year before he was called in to handle the pretrial conference representing Jeffery Rymers. Gallo had never seen or talked to Judge Lucci or his bailiff, had never been in Judge Lucci's courtroom or chambers, and had never even met the Stafford firm's own client, Mr. Rymers, until the day in question.

{¶ 25} The man who was mistaken for Judge Lucci had gone into and out of Judge Lucci's chambers multiple times that morning and had been seen staring in the direction of Gallo and his client, and Mr. Rymers mistakenly confirmed that the man was Judge Lucci. Gallo was aware that Judge Lucci was involved in a relationship with Mr. Rymers's wife and that she and the Rymerses' children were living in the judge's home. It was reasonable for Gallo to believe that his client would recognize Judge Lucci.

{¶ 26} But Gallo did not rely solely on the identification by his client when he prepared his affidavit accusing the judge. He also relied on the identification made by one of the partners in the Stafford firm, who confirmed that the man described by Gallo was Judge Lucci. In addition, Gallo compared the judge's official photograph on the Lake County Common Pleas Court website to his memory of the man he had seen in the hallway. In my view, Gallo took reasonable steps to verify the identity of the person in question.

{¶ 27} Further, I would argue that the circumstances in this case are unusual. The more typical situation in these types of cases is that an attorney attacks the integrity of a judge presiding over a case in which the attorney is involved. In this case, this judge was personally involved in the divorce case that

Gallo was handling, even to the point of filing a motion to intervene in the proceeding. Thus, it was reasonable for Gallo to make the assumption that his client could identify the man in the hallway. And because the case does involve such unusual facts, it is not a situation that is likely to occur again in the future.

{¶ 28} In my view, Gallo made a simple, good-faith mistake—a mistake that was reasonable, not reckless. Moreover, Gallo immediately moved to withdraw his affidavit when he discovered his mistake, and he left his position with the firm shortly thereafter. I dissent from the majority's decision to publicly reprimand him. I would dismiss.

O'DONNELL, J., concurs in the foregoing dissenting opinion.

_____

Jonathan E. Coughlan, Disciplinary Counsel, Lori J. Brown, Chief Assistant Disciplinary Counsel, and Karen H. Osmond, for relator.

Law Offices of Brent L. English and Brent L. English, for respondent.

_____