[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re Judicial Campaign Complaint Against Falter*, Slip Opinion No. 2021-Ohio-1705.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2021-OHIO-1705

IN RE JUDICIAL CAMPAIGN COMPLAINT AGAINST FALTER.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re Judicial Campaign Complaint Against Falter*, Slip Opinion No. 2021-Ohio-1705.]

*Judges—Judicial campaigns—Misconduct—Jud.Cond.R. 4.3(A) prohibits judicial candidates from knowingly or recklessly disseminating false information about opponents—Candidate's erroneous statements regarding when and why opponent had moved to county violated Jud.Cond.R. 4.3(A)—Public reprimand affirmed.*

(No. 2020-0407—Submitted January 13, 2021—Decided May 20, 2021.)

APPEAL from the Order of the Judicial Commission of the Supreme Court.

_____

**Per Curiam.**

{¶ 1} Respondent, Karen Kopich Falter, of Cincinnati, Ohio, Attorney Registration No. 0066770, was admitted to the practice of law in Ohio in 1996. Pursuant to Gov.Jud.R. II(5)(D), a five-judge commission concluded that while Falter was a judicial candidate in 2020, she committed two violations of

Jud.Cond.R. 4.3(A), which prohibits a judicial candidate from disseminating campaign material about an opponent either knowing that it is false or in reckless disregard of whether or not it is false. The commission publicly reprimanded Falter and ordered her to pay a $1,000 fine and the costs of the proceedings. Falter appeals the commission's sanction. For the reasons explained below, we affirm.

## Background

{¶ 2} In March 2017, former Governor John Kasich appointed Curt Hartman—the complainant in this disciplinary action—to a vacant seat as a judge of the Hamilton County Court of Common Pleas. Hartman was later defeated in the November 2018 general election.

{¶ 3} In 2020, Hartman and Falter were opponents in the Republican primary for a different seat on the Hamilton County Court of Common Pleas.[1] In February of that year, Falter's campaign committee sent to 202 Republican voters a letter stating that Hartman had "*moved to Hamilton County 3 years ago to take a judicial appointment from Governor John Kasich in March, 2017.*" (Underlining sic.) The letter additionally stated that Falter had grown up in Hamilton County, had served for 23 years as a public servant in the county, and was recommended by the Hamilton County Republican Party Judicial Screening Committee.

{¶ 4} Hartman filed a judicial-campaign grievance against Falter with the Board of Professional Conduct. Pursuant to Gov.Jud.R. II(5)(B), a probable-cause panel of the board found that probable cause existed to file a formal complaint, and the board's director certified a complaint charging Falter with two violations of Jud.Cond.R. 4.3(A). The complaint alleged that in Falter's campaign letter, she made statements about *when* and *why* Hartman had moved to Hamilton County that she either knew were false or that she had made with a reckless disregard of whether or not they were false.

---

1. Hartman won the primary election but was defeated in the November 2020 general election.

2

**{¶ 5}** The matter proceeded to a hearing before a three-member panel of the board. Hartman, Falter, and one of Falter's campaign consultants testified. Based on the hearing evidence, the panel found that Falter's statements about Hartman in her letter were false: Hartman had moved to Hamilton County in May 2014 with the goal of running for a seat in the Ohio General Assembly, not—as Falter had alleged—in 2017 in order to obtain a judicial appointment in that same year. And according to the panel, a check of public records would have easily shown that Falter's allegations were untrue. Yet Falter, the panel found, made no effort to confirm the truthfulness of her allegations against Hartman and instead chose to rely on statements from her campaign consultants and "what was essentially courthouse and party-insider gossip or rumors" about when and why Hartman had moved to Hamilton County. The panel determined that Falter had acted with reckless disregard as to whether or not the statements in her letter were false and that she had therefore violated Jud.Cond.R. 4.3(A). The panel recommended that she be publicly reprimanded and ordered to pay a $1,000 fine and the costs of the proceedings.

**{¶ 6}** A five-judge commission appointed by this court pursuant to Gov.Jud.R. II(5)(D)(1) reviewed the record of the proceedings, the panel's report, Falter's objections to the report, and Hartman's responses to her objections. In April 2020, the commission found that the panel had not abused its discretion and that the record supported its findings by clear and convincing evidence. 158 Ohio St.3d 1458, 2020-Ohio-1413, 142 N.E.3d 680. The commission therefore publicly reprimanded Falter, fined her $1,000, and ordered her to pay the costs of the proceedings.

**{¶ 7}** Pursuant to Gov.Jud.R. II(5)(E), Falter appeals, arguing that we should dismiss the charges against her or, in the alternative, vacate the public reprimand.

**Falter's Objections to the Commission's Findings of Misconduct**

{¶ 8} Falter sets forth five objections to the commission's findings that she violated Jud.Cond.R. 4.3(A). For ease of analysis, we will address the issues posed by her objections out of order.

New York Times Co. v. Sullivan

{¶ 9} Jud.Cond.R. 4.3 provides:

> During the course of any campaign for nomination or election to judicial office, a judicial candidate, by means of campaign materials, including sample ballots, advertisements on radio or television or in a newspaper or periodical, electronic communications, a public speech, press release, or otherwise, shall not knowingly or with reckless disregard do any of the following:

> (A) Post, publish, broadcast, transmit, circulate, or distribute information concerning the judicial candidate or an opponent, either knowing the information to be false or with a reckless disregard of whether or not it was false.

{¶ 10} The primary issue in this appeal is whether Falter distributed her letter "with a reckless disregard of whether or not it was false" for purposes of Jud.Cond.R. 4.3(A). In her first objection, Falter argues that this language incorporates the actual-malice standard established in *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), and its progeny. Under that standard, Falter asserts, a false statement must have been made with a specific mental state. She also asserts that "reckless disregard" as to a statement's "truth or falsity" is a term of art that requires " 'sufficient evidence to permit the conclusion that the [maker of the statement] in fact entertained serious doubts as to the truth of his publication,' " *Varanese v. Gall*, 35 Ohio St.3d 78, 80, 518 N.E.2d

4

117 (1988), quoting *St. Amant v. Thompson*, 390 U.S. 727, 731, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968), or to permit the conclusion that there was "a high degree of awareness of its probable falsity," *Varanese* at 80. Falter claims that because there was no evidence presented that she entertained serious doubt as to the truth of her statements about Hartman, she lacked the necessary mens rea "required by Jud.Cond.R. 4.3(A) and the First Amendment."

{¶ 11} Falter is correct that Jud.Cond.R. 4.3(A) requires a specific mens rea. In *In re Judicial Campaign Complaint Against O'Toole*, 141 Ohio St.3d 355, 2014-Ohio-4046, 24 N.E.3d 114, we affirmed the constitutionality of the portion of Jud.Cond.R. 4.3(A) at issue in this case and concluded that it requires "a specific mental state as to the information's accuracy (with knowledge of its falsity or with reckless disregard as to its truth or falsity)," *id.* at ¶ 41.

{¶ 12} We disagree, however, with Falter's assertion that Jud.Cond.R. 4.3(A) incorporates the subjective actual-malice definition employed in public-figure defamation cases. Although the language of Jud.Cond.R. 4.3(A) resembles the actual-malice standard established in *New York Times Co. v. Sullivan*, *id.* at 280 (defining "actual malice" as acting "with knowledge that [the statement] was false or with reckless disregard of whether it was false or not"), there are important differences between the interests served by defamation law and those served by ethical rules for judges and judicial candidates. As the Supreme Court of Michigan concluded, the subjective actual-malice standard is inappropriate in this context and adopting it " 'would immunize accusations, however reckless or irresponsible, from censure as long as the attorney uttering them did not actually entertain serious doubts as to their truth.' " *In re Chmura*, 461 Mich. 517, 543, 608 N.W.2d 31 (2000), quoting *In re Holtzman*, 78 N.Y.2d 184, 192, 573 N.Y.S.2d 39, 577 N.E.2d 30 (1991). Instead, the determination whether a judicial candidate recklessly disregarded the truth or falsity of campaign material is an objective one.

**{¶ 13}** We previously determined that an "objective version" of the actual-malice test applies in attorney-discipline proceedings arising from a lawyer's false statements impugning the integrity of a judge. We explained:

> "Defamation actions seek to remedy an essentially private wrong by compensating individuals for harm caused to their reputation and standing in the community. Ethical rules that prohibit false statements impugning the integrity of judges, by contrast, are not designed to shield judges from unpleasant or offensive criticism, but to preserve public confidence in the fairness and impartiality of our system of justice."
>
> * * *
>
> * * * [T]he state's compelling interest in preserving public confidence in the judiciary supports applying a standard in disciplinary proceedings different from that applicable in defamation cases. Under the objective standard, an attorney may still freely exercise free speech rights and make statements supported by a reasonable factual basis, even if the attorney turns out to be mistaken.

(Citations omitted.) *Disciplinary Counsel v. Gardner*, 99 Ohio St.3d 416, 2003-Ohio-4048, 793 N.E.2d 425, ¶ 29, 31, quoting *Standing Commt. on Discipline of the United States Dist. Court for the Cent. Dist. of California v. Yagman*, 55 F.3d 1430, 1437 (9th Cir.1995).

**{¶ 14}** Similar reasoning applies here. The purpose of this proceeding is not to compensate any person for injuries to his or her reputation. Rather, sanctions against judges and judicial candidates for violating Canon 4 of the Code of Judicial Conduct "inform the public of the self-regulating nature of the legal profession and

enhance public confidence in the integrity of judicial proceedings." *O'Toole*, 141 Ohio St.3d 355, 2014-Ohio-4046, 24 N.E.3d 114, at ¶ 64. "Ohio has a compelling interest in promoting and maintaining an independent judiciary, ensuring public confidence in the independence, impartiality, integrity, and competence of judges, and ensuring that the conduct of judicial candidates furthers, rather than impairs, these interests." *Id.* at ¶ 29.

{¶ 15} In addition, the limits on a judicial candidate's speech are not necessarily coextensive with the limits of the First Amendment. The United States Supreme Court has recognized that "[s]tates may regulate judicial elections differently than they regulate political elections, because the role of judges differs from the role of politicians." *Williams-Yulee v. Florida Bar*, 575 U.S. 433, 446, 135 S.Ct. 1656, 191 L.Ed.2d 570 (2015); *see also Disciplinary Counsel v. Tamburrino*, 151 Ohio St.3d 148, 2016-Ohio-8014, 87 N.E.3d 158, ¶ 17 (noting that First Amendment principles in other contexts do not apply "to disciplinary sanctions for knowingly false or recklessly false statements by judicial candidates"); *O'Toole* at ¶ 22-29.

{¶ 16} Thus, Ohio's interest in preserving public confidence in the integrity of its judiciary supports applying a standard in judicial-candidate-discipline proceedings different from that applicable in defamation cases. And an objective standard for determining violations of Jud.Cond.R. 4.3(A) strikes a balance between a judicial candidate's First Amendment rights and the state's compelling interests. Falter's argument in this case fails to account for the fact that "judicial elections fundamentally alter the constitutional calculus," *Platt v. Bd. of Commrs. on Grievances and Discipline of the Ohio Supreme Court*, 894 F.3d 235, 267 (6th Cir.2018). Therefore, whether Falter subjectively had serious doubts about the truth of her allegations is not the sole determinative factor in analyzing whether she acted with the requisite mens rea. We accordingly overrule this objection.

*The alleged ambiguity of Jud.Cond.R. 4.3(A)*

**{¶ 17}** In her fifth objection to the misconduct findings, Falter argues that if the actual-malice standard of *New York Times Co. v. Sullivan* is inapplicable, Jud.Cond.R. 4.3(A) "does not provide notice" of what it prohibits and "encourages arbitrary enforcement." Falter therefore requests that we "find that Jud.Cond.R. 4.3(A) is ambiguous and dismiss the charges."

**{¶ 18}** Jud.Cond.R. 4.3(A) is not ambiguous; it "applies to specific communications made by judicial candidates under narrowly defined circumstances." *O'Toole*, 141 Ohio St.3d 355, 2014-Ohio-4046, 24 N.E.3d 1114, at ¶ 41. As noted above, to violate Jud.Cond.R. 4.3(A), the judicial candidate must have acted with a specific mental state as to the campaign material's accuracy: either knowing the information was false or with a reckless disregard of whether or not it was false. A judicial candidate acts knowingly if he or she has "actual knowledge of the fact in question," although a person's knowledge may be inferred from circumstances. Jud.Cond.R. 4.6(G). A candidate "acts 'recklessly' if the result is possible and the candidate chooses to ignore the risk." *In re Judicial Campaign Complaint Against Moll*, 135 Ohio St.3d 156, 2012-Ohio-5674, 985 N.E.2d 436, ¶ 11. Negligently made false statements or negligent misstatements are not prohibited by the rule.

**{¶ 19}** In determining whether a judicial candidate acted with the requisite mens rea for purposes of Jud.Cond.R. 4.3(A), we consider factors similar to those used when determining whether a lawyer has violated Prof.Cond.R. 8.2(a) by making a statement that the lawyer either knew was false or made "with reckless disregard as to its truth or falsity" concerning the integrity of a judicial officer. We look to the nature of the candidate's statements and the context in which they were made to determine whether the candidate had a reasonable factual basis for making them. *Disciplinary Counsel v. Gallo*, 131 Ohio St.3d 309, 2012-Ohio-758, 964 N.E.2d 1024, ¶ 19; *accord Disciplinary Counsel v. Marshall*, 142 Ohio St.3d 1,

2014-Ohio-4815, 27 N.E.3d 481, ¶ 59 ("In determining whether an attorney has knowingly or recklessly made false statements concerning the integrity of a judicial officer, we consider whether the attorney had a reasonable factual basis for making the statements").

{¶ 20} Determining whether a judicial candidate made a false statement with reckless disregard of its truth or falsity may require weighing evidence and assessing witness credibility—as in any other attorney-discipline case. But contrary to Falter's position, that process does not make enforcement of Jud.Cond.R. 4.3(A) "arbitrary." In *O'Toole*, we affirmed the constitutionality of the portion of Jud.Cond.R. 4.3(A) at issue in this case, *id.* at ¶ 41, and Falter has failed to sufficiently explain why this language is ambiguous.

*The evidence supporting the violations*

{¶ 21} Falter argues in her third objection that even if the standard set forth in *New York Times Co. v. Sullivan* is inapplicable, the charges should be dismissed because she did not act recklessly. According to Falter, she relied on reputable campaign consultants—not gossip—when she included the statements about Hartman in the letter. She similarly argues in her fourth objection that because she relied on her consultants, the record lacked clear and convincing evidence of a Jud.Cond.R. 4.3(A) violation.

{¶ 22} Upon our review of the record, we agree with the commission that the record supports the panel's findings that Falter violated Jud.Cond.R. 4.3(A).

{¶ 23} At the panel hearing, Hartman testified that he moved from Clermont County to Hamilton County in May 2014. He submitted records from the Hamilton County Auditor's office and the Hamilton County Board of Elections showing that he purchased a condominium in Hamilton County in May 2014, registered to vote and cast a provisional ballot in Hamilton County in May 2014, and voted in every Hamilton County election since May 2014. Hartman also testified that he moved to Hamilton County to be closer to his Cincinnati legal practice and to potentially

run for a seat in the Ohio General Assembly, although he later decided against it. In 2016, he learned about the judicial vacancy on the Hamilton County Court of Common Pleas and was appointed to the open seat in 2017. Thus, Hartman testified, both of Falter's statements about his move—that he moved to Hamilton County in 2017 and that he did so for the purpose of taking a judicial appointment—were false.

{¶ 24} Falter admitted that she had personally typed the February 2020 campaign letter stating that Hartman had "*moved to Hamilton County 3 years ago to take a judicial appointment from Governor John Kasich in March, 2017.*" (Underlining sic.) She also admitted that prior to sending the letter, she had not researched Hartman's voting history or his property ownership. And she admitted that her statements about Hartman turned out to be untrue.

{¶ 25} As her defense, Falter claimed that the information in her letter came from her campaign consultants and that she expected the consultants to ensure the accuracy of her campaign messages. But Falter also testified that she did not know how her consultants allegedly knew this information about Hartman and that she never specifically asked them to confirm the accuracy of the allegations or to research his voting history. And one of Falter's campaign consultants testified that the letter was "technically one of [Falter's] projects;" that at the time the letter was being prepared, he did not know when Hartman had moved to Hamilton County; that he did not know where some of the information in the letter came from; and that although there had been discussions about the validity of Hartman's residency, there was "never really a specific time given nor did [the consultants] actually do the full research on it." The campaign consultant also testified that he had reviewed Falter's letter for "grammatical errors," and he explained that "when a client does something on their own, I trust that they have good knowledge of what they're putting in there," especially when his consulting firm had no part in creating the campaign material.

{¶ 26} Similar to her argument on appeal, Falter also testified that she did not rely on rumors when she prepared the campaign letter. But when Falter was asked whether she had done anything to verify her allegation regarding the reason Hartman had moved to Hamilton County, she responded that it was "common knowledge within the legal system." Falter learned of this common knowledge, she testified, through conversations with "different people within the Republican Party" and over lunch with assistant prosecutors who had practiced before Hartman when he was a judge. In attempting to further explain the basis for this knowledge about Hartman, Falter stated that the talk of the legal community was that Hartman had "moved from Clermont County to Hamilton County to be eligible to take an appointment" and that it was "just the common discussion of why Mr. Hartman ended up in Hamilton County."

{¶ 27} Based on this testimony, the panel concluded that Falter "chose to believe what was essentially courthouse and party-insider gossip or rumors without making any effort to check the truthfulness of the allegation." The panel also found that Falter's contract with her consultants did not expressly require them to do "fact checking" of her campaign materials. Because Falter's statements were the type that must be verified and because she failed to take any action to do so, the panel concluded that she acted with reckless disregard of whether or not the statements were false.

{¶ 28} To be sure, the panel heard conflicting testimony. But similar to attorney-discipline proceedings, "it is of no consequence that the * * * findings of fact are in contravention of [the] respondent's or any other witness's testimony. 'Where the evidence is in conflict, the trier of facts may determine what should be accepted as the truth and what should be rejected as false.' " *Disciplinary Counsel v. Zingarelli*, 89 Ohio St.3d 210, 217, 729 N.E.2d 1167 (2000), quoting *Cross v. Ledford*, 161 Ohio St 469, 478, 120 N.E.2d 118 (1954). And "[u]nless the record weighs heavily against a hearing panel's findings, we defer to the panel's credibility

determinations, inasmuch as the panel members saw and heard the witnesses firsthand." *Cuyahoga Cty. Bar Assn. v. Wise*, 108 Ohio St.3d 164, 2006-Ohio-550, 842 N.E.2d 35, ¶ 24.

{¶ 29} The record here does not weigh heavily against the panel's findings. Falter made a pointed attack against her election opponent, citing a specific date and intention. Her accusations, however, were false, and as the panel and commission found, a cursory search of public records would have revealed that her allegations were untrue. Yet Falter made no effort to verify her statements. Although she now argues that she relied on her consultants to fact-check her letter, one of her consultants provided contrary testimony at the hearing and described the letter as Falter's "project." Considering the specific factual nature of her statements, verification of them was necessary. She should have personally confirmed the accuracy of her allegations or ensured that her consultants had done so. A judicial candidate cannot avoid discipline by claiming that she merely repeated statements from her campaign consultants without taking some action to ensure the accuracy of those statements or to inquire about the credibility of the sources.

{¶ 30} In the end, Falter had no reasonable basis to include her allegations about Hartman in her letter and chose to ignore the risk that they were false. By repeating gossip about her election opponent without making any effort to verify the accuracy of her allegations, she acted with a reckless disregard of whether or not her statements were false.

*The truth or falsity of Falter's statements*

{¶ 31} Falter argues in her second objection that the charges should be dismissed because her allegations against Hartman were "substantially true" and that any inaccuracies were immaterial. Specifically, she asserts that it was immaterial whether Hartman moved in 2014 or 2017, because the purpose of her letter was to identify him as a "carpetbagger" and the facts regarding Hartman's

move support the gist of that characterization. She also argues that her letter was immaterial because only a fraction of the Hamilton County electorate received it.

{¶ 32} We need not determine whether, as Falter contends, Jud.Cond.R. 4.3(A) incorporates a "materiality test." Falter's statements about Hartman were false and material to the campaign: she claimed that he moved to Hamilton County three years after he actually did and for the purpose of filling a judicial vacancy that did not exist at the time he moved. Her statements were not reasonably susceptible to a truthful interpretation. In addition, it is irrelevant under Jud.Cond.R. 4.3(A) whether she distributed the letter to 200 or 2,000 voters, and 202 households in a primary election is not an insignificant number of voters.

{¶ 33} "However much or however little truth-bending the public has come to expect from candidates for political jobs, '[j]udges are not politicians,' and a 'State's decision to elect its judiciary does not compel it to treat judicial candidates like campaigners for political office.' " *Winter v. Wolnitzek*, 834 F.3d 681, 693 (6th Cir.2016), quoting *Williams-Yulee*, 575 U.S. at 437-438, 135 S.Ct. 1656, 191 L.Ed.2d 570. We overrule this objection.

{¶ 34} Having overruled Falter's objections to the commission's findings of misconduct, we affirm the commission's conclusion that she committed two violations of Jud.Cond.R. 4.3(A). The rules in Canon 4 "are intended to ensure that judges and judicial candidates campaign in a way that fosters and enhances respect for, and confidence in, the judiciary." *O'Toole*, 141 Ohio St.3d 355, 2014-Ohio-4046, 24 N.E.3d 1114, at ¶ 25. Falter violated both the plain language of the rule and the purpose behind it.

**Falter's Objections to the Commission's Sanction**

{¶ 35} In addition to challenging the commission's misconduct findings, Falter argues that the public reprimand should be vacated. "On an appeal of a commission's order of sanctions, our review is limited to whether the commission abused its discretion." *O'Toole* at ¶ 61. " 'A decision constitutes an abuse of

discretion when it is unreasonable, arbitrary, or unconscionable.' " *Moll*, 135 Ohio St.3d 156, 2012-Ohio-5674, 985 N.E.2d 436, at ¶ 17, quoting *State ex rel. Ebbing v. Ricketts*, 133 Ohio St.3d 339, 2012-Ohio-4699, 978 N.E.2d 188, ¶ 13.

{¶ 36} In reviewing whether the commission abused its discretion, we consider the purpose of sanctions. We have often recognized that "the primary purpose of disciplinary sanctions is not to punish the offender, but to protect the public." *Disciplinary Counsel v. O'Neill*, 103 Ohio St.3d 204, 2004-Ohio-4704, 815 N.E.2d 286, ¶ 53; *see Disciplinary Counsel v. Farris*, 157 Ohio St.3d 527, 2019-Ohio-4810, 138 N.E.3d 1134, ¶ 17. But in judicial-candidate-discipline proceedings, we have also explained that the purpose of sanctions is to inform other judicial candidates of the seriousness of such misconduct and to deter similar violations in future elections. *See O'Toole* at ¶ 64. "[T]he public's faith in the disciplinary proceedings against judges and judicial candidates is fostered by sanctions that reflect the unique injuries on the public by judges and judicial candidates who are not truthful in the information they disseminate." *Id.*

{¶ 37} The commission determined that a public reprimand was appropriate because merely ordering Falter to pay a fine and costs would not serve the deterrence purpose of a sanction. Falter raises two objections to the public reprimand.

*Aggravating and mitigating factors*

{¶ 38} Falter first argues that the commission erred by failing to consider the aggravating and mitigating factors listed in Gov.Bar R. V(13). Falter acknowledges that the hearing panel considered those factors, but she additionally argues that the panel misapplied them. For example, she argues that the panel failed to give her mitigating credit for retracting her statements about Hartman after she learned that they were inaccurate.

{¶ 39} With respect to Falter's argument about the commission, we hold that the commission did not err by omitting consideration of the aggravating and

mitigating factors in its order. Gov.Jud.R. II(5) provides that "a grievance that alleges a violation by a judicial candidate of Canon 4 of the Code of Judicial Conduct during the course of a campaign for judicial office shall be brought, conducted, and disposed of in accordance with this rule and Gov.Bar R. V, *as modified by this section*." (Emphasis added.) Gov.Jud.R. II(5)(D)(1) requires the commission to review the hearing panel's report. If the commission "concludes the record supports the hearing panel's finding that a violation of Canon 4 has occurred and there has been no abuse of discretion by the hearing panel, the commission may enter an order that includes one or more of the following:" a disciplinary sanction, a cease-and-desist order, a fine, an assessment of costs, or an assessment of attorney fees. Nothing in Gov.Jud.R. II(5) required the commission to also independently weigh the aggravating and mitigating factors applicable in other attorney-discipline cases.

{¶ 40} With respect to the hearing panel's findings, we commend Falter for issuing a retraction letter shortly after Hartman's campaign notified her that the letter was inaccurate. But that fact does not mean that her public reprimand should be vacated. Nor has she established that the panel's weighing of the other aggravating or mitigating factors should have any impact on her sanction.

*The public reprimand*

{¶ 41} Falter next argues that her disciplinary sanction should be vacated because she "has been sufficiently reprimanded in public." She claims that although she quickly retracted her campaign letter, she received negative media attention, which culminated in her loss in the primary election. With her objections, Falter submitted screenshots of social-media posts criticizing her for the false campaign letter. She argues that in light of the damage to her reputation, the commission's public reprimand was excessive.

{¶ 42} Gov.Jud.R. II(5)(C)(3) provides for a formal hearing before a hearing panel and there is no provision in Gov.Jud.R. II(5) for the introduction of

additional evidence when the proceedings are in this court on appeal. Similar to other attorney-discipline cases, we would consider accepting additional evidence at this late stage only in the most exceptional circumstances. *See Lorain Cty. Bar Assn. v. Weir*, 156 Ohio St.3d 566, 2019-Ohio-2151, 130 N.E.3d 275, ¶ 13. No exceptional circumstances exist here that would allow Falter to introduce evidence for the first time in her objections. Nor has she otherwise established why alleged critical comments in the media or on social media could somehow substitute for a public reprimand from this court.

{¶ 43} We therefore overrule Falter's two additional objections to the public reprimand. Falter has not established that the commission acted in an unreasonable, arbitrary, or unconscionable manner. A public reprimand is in line with other cases in which judicial candidates have violated Jud.Cond.R. 4.3(A). *See O'Toole*, 141 Ohio St.3d 355, 2014-Ohio-4046, 24 N.E.3d 1114; *Moll*, 135 Ohio St.3d 156, 2012-Ohio-5674, 985 N.E.2d 436. And the sanction will serve as a deterrent to prevent other judicial candidates from knowingly or recklessly disseminating false information during their campaigns. *See O'Toole* at ¶ 64.

### Conclusion

{¶ 44} Because we overrule Falter's objections to the commission's misconduct findings and because the commission did not abuse its discretion in issuing sanctions against Falter for her violations of Jud.Cond.R. 4.3(A), we affirm the commission's order.

Order affirmed.

O'CONNOR, C.J., and GALLAGHER, POWELL, HALL, DONNELLY, and BRUNNER, JJ., concur.

STEWART, J., concurs in judgment only, with an opinion.

SEAN C. GALLAGHER, J., of the Eighth District Court of Appeals, sitting for KENNEDY, J.

STEPHEN W. POWELL, J., of the Twelfth District Court of Appeals, sitting for FISCHER, J.

MICHAEL T. HALL, J., of the Second District Court of Appeals, sitting for DEWINE, J.

_____

**STEWART, J., concurring in judgment only.**

{¶ 45} I agree with the per curiam opinion's holding that an objective, rather than a subjective, standard applies in determining whether a candidate for judicial office has violated Jud.Cond.R. 4.3(A). I also agree that in this case, respondent, Karen Kopich Falter, did not have a reasonable factual basis for the statements she published about her opponent, Curt Hartman. I nevertheless concur in judgment only, because I think it is important to acknowledge that the test we are using to determine whether a false statement was published with "a reckless disregard of whether or not it was false" under Jud.Cond.R. 4.3(A) is in fact a negligence test.

{¶ 46} We are ruling that Falter violated Jud.Cond.R. 4.3(A) when she published information that she gathered from speaking with her campaign consultants and with members of the bar without undertaking to fact-check it. She could have easily discovered the correct information by checking the county auditor's website to see when Hartman had purchased a condominium in Hamilton County and by checking Hartman's voting records. At bottom, the reason for this court's conclusion that Falter violated Jud.Cond.R. 4.3(A) is that she failed to act as a prudent judicial candidate would have acted when she failed to diligently investigate the information before publishing it. In other words, Falter negligently published false information. *See, e.g.*, *Willoughby Hills v. Cincinnati Ins. Co.,* 9 Ohio St.3d 177, 180, 459 N.E.2d 555 (1984), quoting *Embers Supper Club, Inc. v. Scripps-Howard Broadcasting Co.*, 9 Ohio St.3d 22, 457 N.E.2d 1164 (1984), syllabus, *modified on other grounds, Lansdowne v. Beacon Journal Publishing Co.*, 32 Ohio St.3d 176, 512 N.E.2d 979 (1987) (plurality opinion) (the negligence

standard asks " 'whether the defendant acted reasonably in attempting to discover the truth or falsity or defamatory character of the publication' "). The per curiam opinion's insistence that "[n]egligently made false statements or negligent misstatements are not prohibited by" Jud.Cond.R. 4.3(A), majority opinion at ¶ 18, cannot therefore be reconciled with the fact that this court has adopted and applied an objective-reasonableness test.

————————————

Finney Law Firm, L.L.C., and Christopher P. Finney, for complainant.

Isaac, Wiles, Burkholder & Teetor, L.L.C., Donald C. Brey, and Matthew R. Aumann, for respondent.

————————————